UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
NOV 0 5 2019
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____ DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>*Plaintiff,*<br><br>v.<br><br>CHENGYU WANG,<br>*Defendant.* | §<br>§<br>§<br>§<br>§   Civil Action No. 5:19-cv-00586-OLG<br>§<br>§<br>§ |

## ORDER

On this day, the Court considered Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (docket no. 6) (the "Motion"). Having reviewed the Motion, the Court finds that it should be DENIED.

## BACKGROUND

The Government initiated this lawsuit against Defendant Chengyu Wang ("Defendant") seeking a denaturalization order pursuant to 8 U.S.C. § 1451(a). Defendant is currently enlisted in the U.S. Army. The Government alleges that Defendant is a member in the Chinese Communist Party, made multiple false statements to procure immigration benefits, and made statements suggesting he swore falsely when he took the Oath of Allegiance. *See* docket no. 1. Defendant files this Motion arguing that the Government is collaterally estopped from litigating these issues as the U.S. Army's Administrative Separation Board ("ASB") previously declined to dishonorably discharge him under the same facts. Docket no. 6. The Court will first outline the facts alleged in the complaint, which center around Defendant's various immigration applications, and will then turn to the facts of the ASB's proceeding.

1

*1. The Complaint*

Defendant was born in Dalian, Lioaning, People's Republic of China and arrived in the United States in 2013 on an F-1 student visa to study at Brown University in Providence, Rhode Island. Docket no. 1 at ¶¶ 5 and 7. On October 20, 2015, Defendant enlisted in the U.S. Army Reserve under the Military Accessions Vital to the National Interest ("MAVNI") program. *Id.* at ¶ 8. As part of his application process, Defendant submitted a Standard Form 86, Security Clearance Application ("SF-86") in which he stated the following information: that he did not know his parents' employers; that his father was not affiliated with a foreign government; that no immediate family member, in the past seven years, had "been asked to provide advice or serve as a consultant, even informally by any foreign government official or agency;" that he had never voted in a foreign election; and that, within the past seven years, no immediate family member "had any contact with a foreign government." *Id.* at ¶¶ 10-16.

On November 24, 2015, Defendant submitted a Form DS-160, Online Nonimmigrant Visa Application to apply for a new F-1 student visa. *Id.* at ¶ 17. Defendant's form stated that he would be submitting his application in Shenyang, China, although the Government alleges that Defendant was in the United States at the time. *Id.* at ¶ 18. The Government then alleges that Defendant traveled back to China to retrieve his visa after it was approved, and that he was admitted to the United States again on January 22, 2016. *Id.* at ¶¶ 23-25.

Then, in May of 2016, Defendant submitted his Form N-400, Application for Naturalization ("Form N-400") to U.S. Citizenship and Immigration Services ("USCIS"). On this form, Defendant answered "No" to whether he had ever been a member of, involved in, or associated with an organization or group in the United States or around the world. *Id.* at ¶ 27. Defendant also answered "No" to whether he had ever been a member of or in any way

associated with "The Communist Party;" to whether he had ever received any military training; and to whether he had ever committed a crime for which he was not arrested, ever given false or misleading information to a government official, or ever lied to government officials to gain immigration benefits. *Id.* at ¶¶ 28-32. On June 28, 2016, Defendant sat for his naturalization interview under oath with a USCIS officer and answered questions consistently with his Form N-400 responses. *Id.* at ¶¶ 34-35. The USCIS approved Defendant's naturalization application, and on July 14, 2016, Defendant took the Oath of Allegiance and became a U.S. citizen. *Id.* at ¶ 38.

Defendant was then subjected to further interviews in connection with his enlistment through the MAVNI program. In these interviews, Defendant allegedly gave answers inconsistent with the responses outlined above. Specifically, the Government alleges that Defendant told Special Agent Neal E. Merchant of the U.S. Army Criminal Investigative Division that he had been a member of the Chinese Youth Communist Organization and that both his mother and father held positions related to the Chinese government. *Id.* at ¶¶ 39-44. In a separate interview, Defendant told Kristoffer P. Cacayorin of the U.S. Army Criminal Investigative Division that he had completed a two-week paramilitary training with the "People's Liberation Army." *Id.* at ¶ 46. He also stated that he voted in a 2010 Chinese election, and that he still claimed "50/50 allegiance to both U.S. and China." *Id.* at ¶¶ 47 and 50. Subsequently, Defendant's cellphone was seized pursuant to a search warrant in which Defendant and his mother had messaged that his application to the Chinese Communist Party had been approved. *Id.* at ¶ 54.

On the basis of these allegations, the Government seeks this Court's order revoking Defendant's naturalization.

*2. The ASB Proceeding*

Defendant files this Motion arguing that the above facts have already been litigated and necessarily decided by the ASB. Specifically, the U.S. Army sought to dishonorably discharge Defendant under Army Regulation 635-200, Chapter 14-12(c), which states that a soldier may be discharged for "[c]omission of a serious military or civil offense, if the specific circumstances of the offense warrant separation and a punitive discharge is, or would be, authorized for the same or a closely related offense." Docket no. 6 at p. 4. The U.S. Army alleged "fraudulent enlistment" against Defendant, in that he "knowingly made false representations and concealed material information regarding his qualifications for enlistment in order to procure enlistment into the United States Army." *Id.* at p. 5. At the ASB proceeding, the U.S. Army introduced Defendant's naturalization application, his cellphone extractions, and various interviews with the investigative officers (including those outlined above.). *Id.*

The U.S. Army presented the following bases for the finding of fraudulent enlistment: (1) Defendant was affiliated with the Chinese Communist Party and misrepresented this affiliation throughout his enlistment process, including on his naturalization application; (2) Defendant misrepresented his previous military and weapons training experience on his naturalization application and throughout the enlistment process; (3) Defendant had loyalties to China and misrepresented these loyalties on his naturalization application when he pledged he would take the Oath of Allegiance without mental reservation; (4) Defendant misrepresented his parent's employment and contacts with the Chinese government as well as his voting record on his SF-86; (5) Defendant misrepresented his immigrant intent during the enlistment process, particularly his responses on his 2015 F-1 student visa application. *See id.* at pp. 5-6.

The ASB found that the U.S. Army did not meet the preponderance of the evidence to support a dishonorable discharge under 14-12(c), but that the evidence would support an honorable discharge under another provision. Docket no. 6-1 at p. 28. Notably, however, an honorable discharge would not result in an automatic revocation of Defendant's naturalization. *See* 8 U.S.C. 1440(c).

Defendant's Motion highlights the common factual issues between the ASB proceeding and the Government's complaint in this case, and thus argues that collateral estoppel bars the relitigation of these issues.

## ANALYSIS

As a threshold matter, the Government first opposes Defendant's Motion on the grounds that collateral estoppel should be raised as an affirmative defense and not form the basis of a Rule 12(b)(6) motion. *See* docket no. 13. Fifth Circuit precedent suggests that res judicata or collateral estoppel should not be the grounds for dismissal under Rule 12(b)(6) unless the elements are "apparent on the face of the proceedings." *Dean v. Mississippi Bd. of Bar Admissions*, 394 F. App'x 172, 175 (5th Cir. 2010). As Defendant correctly points out, the complaint does not contain any facts about the ASB proceedings, and evidence from these proceedings is only introduced by Defendant's Motion. *See* docket nos. 1 and 13. Accordingly, the Court converts Defendant's Motion to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 12(d), which provides that "if on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment . . . ."). *See Avila v. Ocwen Loan Servicing, LLC*, 2014 WL 5795495, at *3 (W.D. Tex. Nov. 6, 2014).

The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision is conclusive in a subsequent suit based on a different cause of action involving a party to the prior litigation." *United States v. Mendoza*, 464 U.S. 154, 158 (1984). The Fifth Circuit typically applies a three-part test for collateral estoppel: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Amrollah v Napolitano*, 710 F.3d 568, 571 (5th Cir. 2013) (citing *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc)). Historically, collateral estoppel required mutuality of parties, or, in other words, that both parties to the current suit were parties to the prior suit. *See Triplett v. Lowell*, 297 U.S. 638, 645 (1936). The Supreme Court altered the mutuality rule, however, in *Blonder-Tongue Labs., Inc. v. University of Illinois Found.*, in which it allowed a non-party to the prior judgment to use that judgment against a prior party. 402 U.S. 313, 350 (1971). This shift from the mutuality rule did not change the requirement that the party (or its privies) *against whom* the judgment is being used must have been a party (or in privity with a party) to the prior proceeding. *Id.* at 329 ("Due process prohibits estopping [those who never appeared in a prior action] despite one or more existing adjudications of the identical issue which stand squarely against their position."); *see also Settlement Funding, LLC v. TransAmerica Occidental Life Ins. Co.*, 555 F.3d 422, 425 (5th Cir. 2009) (United States was not a party to a prior action and thus was not precluded by collateral estoppel from relitigating an issue.). The Court, therefore, must determine whether the Government is in privity with the U.S. Army and therefore had a full and fair opportunity to litigate the issues in the ASB proceeding.

The issue of whether a federal agency is in privity with another federal agency for the purposes of collateral estoppel or res judicata is a case-by-case determination. In *Sunshine*

*Anthracite Coal*, the Supreme Court stated that federal officers or agencies are in privity with the Government so long as "in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940). In that case, the Bituminous Coal Act of 1937 imposed an excise tax on bituminous coal, and then delegated the authority to classify coal as bituminous to the National Bituminous Coal Commission. *Id.* at 387-89. Based on this statutory authority, the Bituminous Coal Commission issued a classification of Sunshine Anthracite Coal Company's coal, which precluded the relitigating of that issue in a proceeding with the IRS. *Id.* at 402. The Court reasoned that the classification of the coal was statutorily delegated to the Bituminous Coal Commission, giving it the authority to determine the issue on behalf of the entire Government. *Id.* at 403.

Applying this reasoning to this case, the Court finds that the U.S. Army did not have the authority to litigate the issue of Defendant's naturalization on behalf of the entire Government. Rather, the U.S. Army litigated whether Defendant should be involuntarily discharged and how that discharge should be characterized. *See* docket no. 6-1. The Government, on the other hand, is tasked with litigating Defendant's naturalization status. *See* 8 U.S.C. 1451(a). Thus, a key part of the *Sunshine Anthracite Coal* analysis is missing, namely, the statutory authority to decide the issue. Docket no. 13; 310 U.S. at 403. Moreover, other courts have declined to hold that administrative agencies pursuing different statutory roles are in privity with the Government as a sovereign for purposes of collateral estoppel and res judicata. *See United States v. Wanland*, 830 F.3d 947, 956-57 (9th Cir. 2016) (holding that IRS and United States were not in privity as the IRS's role in pursuing tax debts in a bankruptcy proceeding was not acting as the Government enforcing criminal law); *see also United States v. Hickey*, 367 F.3d 888, 893 (9th Cir. 2004);

7

*United States v. Alky Enters., Inc.*, 969 F.2d 1309 (1st Cir. 1992). Accordingly, the Court finds that the Government was not in privity with the U.S. Army in the ASB proceeding, and thus the ASB proceeding's factual findings cannot be used as collateral estoppel against the Government in this case. The Court need not reach the remaining elements of collateral estoppel. Defendant's Motion is DENIED.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) (docket no. 6), which the Court construes as a motion for summary judgment pursuant to Rule 12(d), is **DENIED**.

It is so **ORDERED**.

**SIGNED** this \_\_\_\_ day of November, 2019.

                                                                                        ORLANDO L. GARCIA
                                                                                        CHIEF UNITED STATES DISTRICT JUDGE