UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff*, | §<br>§<br>§ |
| *v.* | §<br>§  Civil Action No. 5:19-cv-00586-OLG |
| CHENGYU WANG,<br>    *Defendant.* | §<br>§<br>§ |

## ORDER

On this day, the Court considered Defendant's Motion to Disqualify and Objections to Plaintiff's Proposed Expert Witness (docket no. 32) (the "Motion"). Having reviewed the Motion and the record, the Court finds that it should be DENIED.

## BACKGROUND

On March 20, 2020, the Government designated Dr. David Shambaugh as its expert witness. *See* docket no. 30. The Government states that Dr. Shambaugh is fluent in Mandarin and is the Gaston Sigur Professor of Asian Studies, Political Science & International Affairs, and the Director of the China Policy Program at George Washington University. *Id.* According to the Government, Dr. Shambaugh will testify regarding the structures of the Chinese Communist Party and the Communist Youth League of China and then translate texts from Mandarin to English. *Id.*

Defendant moves to disqualify Dr. Shambaugh on two grounds. First, Defendant argues that Dr. Shambaugh should be disqualified because he engaged in privileged communications with Defendant's counsel. *See* docket no. 32. Specifically, on February 3, 2020, Defendant's counsel sent Dr. Shambaugh an email seeking to engage him as an expert witness for this case. *Id.* at p. 2. Defendant asserts that this initial email communicated privileged, confidential and

1

revealing aspects of his trial strategy. *Id.* Dr. Shambaugh replied to this email, confirming that he is an expert on the issues and quoting a rate of $1,500 per hour. *Id.*; *see also* docket no. 34-1. Defendant's counsel then asked for Dr. Shambaugh's CV and "a brief overview on [his] expertise pertaining to the Chinese Communist Party," to which Dr. Shambaugh replied with his bio. *Id.* Then, on February 4, 2020, Dr. Shambaugh abruptly told Defendant he would have to decline. *Id.* That same day, the Government's counsel reached out to Dr. Shambaugh to engage him as an expert. Moreover, neither the Government nor Dr. Shambaugh provided any notice that Defendant's counsel had sought to engage him as an expert. *See* docket no. 30 As a result, Defendant argues that he should be disqualified.

Second, Defendant argues that Dr. Shambaugh does not have the expertise to opine on matters related to Mandarin translation. *See* docket no. 32. Defendant argues that Dr. Shambaugh bases his qualification to provide translation solely on his "self-proclaimed fluency" in Mandarin. *See* docket no. 34. Defendant disputes that fluency in a language qualifies a person to serve as an expert in translating that language to English. Moreover, Defendant notes that Dr. Shambaugh offers no evidence supporting his self-proclaimed fluency nor does he cite any knowledge or other skills that qualify him to testify on linguistic matters. *Id.* Being an expert on Chinese politics, Defendant argues, does not qualify him to provide translations. *Id.*

## ANALYSIS

This Court has previously recognized that "federal courts have the inherent power to disqualify experts." *City of San Antonio v. Edwards Aquifer Auth.*, 2014 WL 12495317, at *2 (W.D. Tex. Sept. 30, 2014). In determining motions to disqualify experts based on an alleged conflict of interest, the Fifth Circuit has declined to state a "bright-line rule" in cases where an expert did not switch sides. *Koch Refining Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178, 1181

(5th Cir. 1996). Instead, the Court should apply a two-part test. "First, was it objectively reasonable for the first party who claims to have retained the expert to conclude that a confidential relationship existed? Second, was any confidential or privileged information disclosed by the first party to the expert?" *Id.* at 1181. To warrant disqualification, "an affirmative answer must be given to both parts of the test, and the party seeking disqualification bears the burden of proving that disqualification is warranted." *Yelton v. PHI, Inc.*, 2011 WL 2294392, at *2 (E.D. La. June 8, 2011).

The Court finds that Defendant has not met his burden of establishing that it was objectively reasonable to conclude that a confidential relationship existed. As other courts in the Fifth Circuit have stated, "an assumption of confidentiality is reasonable when there has been a 'longstanding series of interactions' between the expert and party 'which have more likely than not coalesced to create a basic understanding of [the party's] modus operandi, patterns of operation, decision-making process, and the like." *Yelton*, 2011 WL 2294392, at *2 (quoting *Koch Refining*, 85 F.3d at 1182). Defendant has not met this standard. Instead, Defendant's counsel and Dr. Shambaugh exchanged emails over the course of a 24-hour period before Dr. Shambaugh declined to serve as Defendant's expert. *See* docket no. 34-1. The only email that Defendant asserts contained confidential information was the initial email, which both parties agree was an unsolicited and introductory email regarding Dr. Shambaugh's potential as an expert witness. *Id.* After that introductory email, Defendant's counsel and Dr. Shambaugh exchanged brief emails regarding his rate, his CV, and his willingness to testify at depositions before Dr. Shambaugh abruptly notified Defendant's counsel that he was unable to accept. *Id.* These communications clearly fall short of the "longstanding series of interactions" that make it objectively reasonable that a confidential relationship existed. *Koch Refining*, 85 F.3d at 1182.

Instead, this email chain appears to be more like an "informal consultation rather than the commencement of a long-term relationship." *Id.* ("[W]hen the expert met but once with counsel, was not retained, was not supplied with specific data relevant to the case, and was not requested to perform any services, reviewing courts have found that the evidence supports a finding that the meeting was a type of informal consultation rather than the commencement of a long-term relationship."). Dr. Shambaugh did not sign a retainer agreement, nor did he prepare any work product for Defendant. The email chain plainly reflects that Dr. Shambaugh even expressed hesitation about testifying at trial. *See* docket no. 34-1. Then, Defendant's counsel asked Dr. Shambaugh to provide his CV, further suggesting that neither party thought Dr. Shambaugh had been retained as an expert. Rather, the email chain is the beginning of a negotiation that is abruptly ended, and no confidential information or expertise is exchanged outside of the initial introductory email. *Id.* Defendant fails to cite any cases which support that an introductory and unsolicited email to a potential expert disqualifies that expert from being retained by an adverse party. Accordingly, the Court finds that Defendant has not met his burden with respect to the first element.

Because the Defendant has not established that it was objectively reasonable to conclude that a confidential relationship existed between him and Dr. Shambaugh, the Court need not consider the second element. Defendant's Motion is DENIED with respect to Dr. Shambaugh's disqualification based on a conflict of interest.

As noted above, Defendant also seeks to disqualify Dr. Shambaugh as an expert on linguistics and translation from Mandarin to English. *See* docket no. 32. Federal Rule of Evidence 702 permits the testimony of an expert witness who is well qualified by knowledge, skill, experience, training and education to render an opinion based on scientific, technical or

other specialized knowledge that may "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-93 (1993). Defendant argues, without citing any case law, that merely claiming to be fluent in a language does not qualify you to be an expert witness regarding the translation of that language and interpretation of text messages. *See* docket nos. 32 and 34. The Court notes that neither party has attached Dr. Shambaugh's expert report, and the record indicates that the parties have not yet conducted expert witness depositions. Accordingly, based on the current record, the Court finds that disqualification under Rule 702 is unwarranted. However, Defendant may move to disqualify Dr. Shambaugh pursuant to Rule 702 on a more complete record following his deposition. Until then, this Motion is DENIED.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Disqualify and Objections to Plaintiff's Proposed Expert Witness (docket no. 32) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this   5th   day of June, 2020.

ORLANDO L. GARCIA
CHIEF UNITED STATES DISTRICT JUDGE