UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED

SEP 28 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
            DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL NO. SA-19-CV-00586-OLG |
| CHENGYU WANG, | § § § | |
| Defendant. | § § § | |

## ORDER DENYING DEFENDANT'S SECOND MOTION TO PARTIALLY DISQUALIFY PLAINTIFF'S EXPERT WITNESS

Pending before the Court is Defendant's Second Motion to Partially Disqualify Plaintiff's Proposed Expert Witness, which relates to the Government's witness Dr. David Shambaugh. *See* docket no. 48 (the "Motion" or "Mot."). Having reviewed the Motion and the record, the Court finds that the Motion should be **DENIED**.

### BACKGROUND

The Government brings this action under 8 U.S.C. § 1451(a) to revoke Defendant Chengyu Wang's United States citizenship and to cancel his Certificate of Naturalization. Docket no. 1 at 1, 23. Among the reasons for doing so, the Government claims, is that Mr. Wang was allegedly a member of the Chinese Communist Party ("CCP") and either willfully misrepresented or concealed that fact while seeking U.S. citizenship through the Military Accessions Vital to the National Interest (MAVNI) program. *See, e.g., id.* at 12–23. The Government contends that if it proves any of those facts, the Court must enter judgment in its favor. *Id.*

In its efforts to do so, the Government retained Dr. David Shambaugh as an expert witness. *See* docket no. 30. The Government intends to offer Dr. Shambaugh's testimony on two main issues. First, Dr. Shambaugh intends to testify regarding the political nature of the CCP and the Communist Youth League of China. *Id.* at 2. Second, he intends to translate and interpret certain communications between Mr. Wang and his mother, which allegedly support the conclusion that Mr. Wang was at some time a member of the CCP. *See id.*; Expert Rep. of David Shambaugh ("Shambaugh Rep."), docket no. 48-1 at 5 (Dr. Shambaugh's translation and analysis of WeChat messages between Mr. Wang and his mother); docket no. 60 at 19 (Government's motion for summary judgment asserting that, based on Dr. Shambaugh's translation, Mr. Wang was a member of the CCP). Mr. Wang has also retained an expert to opine on the correct translation of those communications. *See* Expert Rep. of Dana Scott Bourgerie ("Bourgerie Rep."), docket no. 53-2.

Mr. Wang first moved to disqualify Dr. Shambaugh based on allegedly privileged communications between Dr. Shambaugh and counsel for Mr. Wang and on Dr. Shambaugh's purported lack of expertise in Mandarin to English translation. *See* docket no. 32. The Court denied Mr. Wang's motion but allowed him to reassert his arguments regarding Dr. Shambaugh's qualifications on a fuller record. Docket no. 41. Mr. Wang has now deposed Dr. Shambaugh and provided the Court with a copy of his expert report. *See* docket nos. 48-1, 48-2. The Motion followed, which seeks only to disqualify Dr. Shambaugh "to the extent [he] seeks to provide expert testimony about linguistic matters" under Federal Rule of Evidence 702. Mot. at 1. Mr. Wang does not challenge Dr. Shambaugh's ability to opine on the other topics addressed in his expert report. *Id.*; docket no. 53 at 2 n.1.

## DISCUSSION

I. **Legal Standard**

The Court should allow the testimony of an expert witness who is qualified by "knowledge, skill, *experience*,[1] training, or education" to render an opinion based on scientific, technical, or other specialized knowledge that may "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a) (emphasis added); *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–93 (1993). Trial courts act as the gatekeepers of expert testimony, and the "gatekeeping inquiry must be tied to the facts of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (citing *Daubert*, 509 U.S. at 590–93) (internal quotation marks omitted). "An expert witness's testimony should be excluded if the district court 'finds that the witness is not qualified to testify in a particular field or on a given subject.'" *Carlson v. Bioremedi Therapeutic Systems, Inc.*, 822 F.3d 194, 199 (5th Cir. 2016) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)). However, "'Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility.'" *Id.* (quoting *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). "Generally, if there is some reasonable indication of qualifications, the court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact . . . ." *Villegas v. Cequent Performance Prods., Inc.*, Civil Action No. SA-15-CV-473-XR, 2017 U.S. Dist. LEXIS 28597, at *23 (W.D. Tex. Mar. 1, 2017) (citing *Rushing v. Kan. City S. Ry.*, 185 F.3d 496, 507 (5th Cir. 1999)).

---

[1] Mr. Wang's quotation of Rule 702 does not include that an expert may be qualified by his or her experience. Docket no. 48 at 2.

3

## II.     Dr. Shambaugh Is Qualified to Opine on the Correct Contextual Translation of the WeChat Messages.

### A. Knowledge, Skill, Training, and Experience

Mr. Wang seeks to exclude Dr. Shambaugh's testimony regarding the correct translation of WeChat messages between Mr. Wang and his mother because Dr. Shambaugh does not have the requisite expertise under Rule 702. *See* Mot. at 2–5. Mr. Wang argues that Dr. Shambaugh has not "taught any courses," or "authored any literature," nor does he have "any professional positions or experience involving Chinese linguistics." *Id.* at 3. Dr. Shambaugh does not hold a degree "in the Chinese language." *Id.* at 3. Mr. Wang also highlights that Dr. Shambaugh testified at his deposition that he is "not a linguist by training or degree." Deposition of David Shambaugh ("Shambaugh Dep.") at 80:8–81:1 (Oct. 29, 2020), docket no. 48-2; *see* Mot. at 3. In response, the Government argues that Dr. Shambaugh's fluency in Mandarin (docket no. 52 at 6), his educational experience with Mandarin and experience reviewing Mandarin texts (*id.* at 6–7), and the similarity between his translation and Dr. Bourgerie's translation (*id.* at 7) qualifies him to testify under Rule 702.

Dr. Shambaugh is currently the Gaston Sigur Professor of Asian Studies, Political Science & International Affairs at the George Washington University. Docket no. 48-1 at 8, Exhibit A at 1 ("Shambaugh CV"). He earned his Ph.D. from the University of Michigan in 1989 on a dissertation related to Chinese politics. *Id.* His prior university-level education focused on East Asian Studies and international affairs. *Id.* He has written, taught, and presented on Chinese politics on numerous occasions, earning accolades and awards for his work. *See generally* Shambaugh CV. Dr. Shambaugh began studying Mandarin in 1976, including while residing in China and Taiwan, and received "several certificates for the courses" he "completed in the Chinese language." Shambaugh Dep. 80:8–81:6. Dr. Shambaugh has been

4

working with Chinese texts for several decades, without any apparent gaps in that work. *See id.*; *see generally* Shambaugh CV. In short, Dr. Shambaugh can speak and read Mandarin and has done so for several decades.

Despite Mr. Wang's contention, Dr. Shambaugh does not need to be a professor of, teach, or hold degrees in Chinese linguistics to be qualified to opine on the correct contextual translation of the WeChat messages. "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue." *Carlson*, 822 F.3d at 199 (internal quotation marks omitted); *see United States v. Gutierrez*, 757 F.3d 785, 788 (8th Cir. 2014) ("Whether a witness is formally certified in a field by a professional organization may be relevant to his expertise, but [Rule 702] does not require any particular imprimatur."). Other courts have found translation experts with similar backgrounds qualified. *See, e.g., United States v. Muro*, 784 F. App'x 160, 162–63 (4th Cir. 2019) (native Spanish speaker without a degree or interpreter certification qualified to opine on translation); *United States v. Conteh*, 589 F. App'x 634, 637 (4th Cir. 2014) (daily use of Sierra Leoneon Creole qualified un-certified teacher in a different field to opine on translation); *Nick v. Bethel*, No. 3:07-cv-0098 TMB, 2009 U.S. Dist. LEXIS 147682, at *11 (D. Alaska Feb. 13, 2009) (proposed expert's "fluency in English and Yup'ik, and her extensive experience translating medical and legal information into Yup'ik satisfies the requirements of Rule 702"). But even if Dr. Shambaugh were not qualified to opine on the veracity of *every* Mandarin-to-English translation, he is, at minimum, qualified to translate the word transliterated as "dang"—which both Dr. Shambaugh and Dr. Bourgerie generally agree means "party" in English[2]—and other conversational communications. That type of translation is ancillary to Dr. Shambaugh's routine work in the field of Chinese political studies. *Cf.*

---

[2] *Compare* Shambaugh Rep. at 5 *with* Bourgerie Rep. at 2; *see* docket no. 53 at 3 ("Dr. Bourgerie explains that 'dang' refers to 'party' and provides several examples about how the term is used without reference to the CCP.").

5

*Carlson*, 822 F.3d at 200 ("A medical degree is not a prerequisite for expert testimony relating to medicine. For example, we have held that scientists with PhDs were qualified to testify about fields of medicine ancillary to their field of research.").

Mr. Wang's recitation of Dr. Shambaugh's professional experience is correct insofar as it shows that Dr. Shambaugh is not a certified translator and does not have a degree in Chinese linguistics. But given Dr. Shambaugh's fluent Mandarin language skill and experience, coupled with his extensive expertise in Chinese history and politics, the Court finds by a preponderance of the evidence that he is qualified to opine on the translation of Mr. Wang's WeChat communications from Mandarin to English. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 459–60 (5th Cir. 2002). Mr. Wang remains free to challenge the weight those translations should be given at the appropriate time.

### B. Specialized Knowledge

Mr. Wang argues further that Dr. Shambaugh's fluency in Mandarin is no different than "the world's other 1.3 billion Chinese speakers" and therefore his testimony does not "derive[] from 'a process of reasoning which can be mastered only by specialists in the field.'" Mot. at 4 (first citing *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004); and then quoting *United States v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008)). Mr. Wang's argument mistakes Rule 702.

The test to determine whether an expert is qualified to provide expert opinion testimony is not whether some other person also has specialized knowledge in the field, it is whether the *proffered* expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702(a); *see Kumho*, 526 U.S. at 156 ("The trial court had to decide whether *this particular expert* had

sufficient specialized knowledge to assist the jurors 'in deciding the particular issues in the case.'" (quoting 4 J. McLaughlin, Weinstein's Federal Evidence P702.05[1], p. 702–33 (2d ed. 1998)) (emphasis added). The Court has no background or experience in reading or understanding Mandarin. Accordingly, Dr. Shambaugh's (and Dr. Bourgerie's) testimony will help the Court understand the evidence in this case.

Further, *Sosa and Tin Yat Chin* are inapposite. In *Sosa*, the Fifth Circuit suggested, but did not decide, that the district court may have erred when it admitted certain testimony by a police officer under Rule 701 rather than analyzing the testimony under Rule 702. *See Sosa*, 513 F.3d at 200–01. The Court has conducted the Rule 702 analysis and found Dr. Shambaugh meets those requirements. *Tin Yat Chin* is similarly off point. There, the Second Circuit addressed the proffered expert's ability to opine on whether the defendant could fake a Mandarin accent based on a fifteen-second audio clip. *Tin Yat Chin*, 371 F.3d at 40–41. The Court does not find anything sufficiently persuasive in *Tin Yat Chin* to disqualify Dr. Shambaugh.

Mr. Wang's remaining arguments—particularly those highlighting the differences between Dr. Shambaugh's and Dr. Bourgerie's translations—go to the weight of Dr. Shambaugh's testimony, which are appropriately addressed through "[v]igorous cross-examination [and] presentation of contrary evidence," not disqualification. *Daubert*, 509 U.S. at 596.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Second Motion to Partially Disqualify Plaintiff's Proposed Expert Witness, docket no. 48, is **DENIED**.

It is **FURTHER ORDERED** that the Clerk of Court shall file this Order **UNDER SEAL**.

7

It is **FURTHER ORDERED** that within seven days of the entry of this Order, the Parties shall either advise the Court that there are no objections to this Order being filed publicly pursuant to the Stipulated Protective Order, docket no. 26, or submit jointly proposed redactions to the Order.

It is so **ORDERED**.

**SIGNED** this 14 day of September, 2021.

———————————————
ORLANDO L. GARCIA
Chief United States District Judge